## WILLIAM BLAGG v. MISSOURI STATE LIFE INS. CO.

Eastern Section.    June —, 1932.

Petition for Certiorari denied by Supreme Court, November 26, 1932.

Evans & Snell, of Elizabethton, and Divine & Guinn, of Johnson City, for plaintiff in error.

Cox, Taylor & Epps, of Johnson City, for defendant in error.

OWEN, J.   William Blagg, the plaintiff below, has appealed from a judgment dismissing his suit. There was a directed verdict in favor of the defendant at the conclusion of plaintiff's evidence. A motion for a new trial was overruled. The plaintiff appealed, and has assigned errors.

The suit was instituted December 11, 1931, against the Missouri State Life Insurance Company, and the John Hancock Mutual Life Insurance Company. Both defendants were sued, and it was alleged that they had issued certain policies of insurance to the plaintiff, that the Missouri State Life Insurance Company, hereinafter called defendant, had issued a group policy No. G-2592, certificate No. 326, to the American Glanzstoff Corporation, which policy provided that in the event the insured became totally and permanently disabled for a period of six months, the said Company shall pay him the sum of $2750, as provided in said policy. And it was alleged that he had become totally disabled by reason of a certain disease affecting his right wrist.

The John Hancock Company filed a demurrer. And there was also a motion to strike the declaration from the file on the grounds of duplicity to there being two insurance companies sued on different policies in the same cause of action.

The plaintiff was permitted to take a nonsuit as to the John Hancock Company, and amend his declaration so as to sue the Missouri State Life Insurance Company only.

The defendant filed pleas alleging that it did not owe the plaintiff, did not contract with the plaintiff as alleged in his declaration, that the plaintiff is not totally and permanently disabled within the meaning of the terms of said policy and was not at the time suit was instituted. And that the policy of insurance sued on was not in force or effect at the time of plaintiff's alleged cause of action accrued.

Replications were filed to these special pleas.

The plaintiff has assigned six errors:

(1) There is no evidence to support the verdict.

(2) The verdict is contrary to law; this assignment is overruled because it is too general.

(3) That all the testimony preponderates in favor of the plaintiff and against that of the defendant. This assignment will be considered with the next three assignments, which all allege that the trial court erred in directing a verdict in favor of the defendant at the conclusion of plaintiff's testimony.

The only question to be determined is whether or not this cause should have been submitted to the jury.

It appears that on December 10, 1928, the defendant issued to the American Glanzstoff Corporation, called the employer, a certain insurance policy on the life of William L. Blagg, the plaintiff, designated in the insurance policy the employee. Said insurance policy was for the sum of $2750, payable to plaintiff's mother if death shall occur while an employee of the employer, and during the continuance of the insurance under the certificate issued. The certificate also provided for a change of beneficiary, and was to be in force when the premiums had been paid. The certificate also provided as follows:

"If the Employee shall furnish the company with due proof that, before having attained the age of sixty years, he or she has become totally and permanently disabled by bodily injury or disease, and that he or she is then, and will be at all times thereafter, wholly prevented thereby from engaging in any gainful occupation, and that he or she has been so permanently and totally disabled for a period of six months, the Company will immediately pay to the Employee in full settlement of all obligations hereunder, the amount of insurance in force hereunder on the Employee at the time of the approval by the Company of the proofs as aforesaid.

"This amount will be paid either in one sum or in installments. Each installment payment after the first shall be increased by such divident from interest earnings as the Company may apportion.

In addition to or independently of all other causes of total and permanent disability the Company will consider the entire and irrecoverable loss of the sight of both eyes, or the loss of use of both hands, or of both feet, or of one hand and one foot as total and permanent disability within the meaning of this provision."

Plaintiff, at the time said insurance policy certificate was issued, was a supervisor in the silk mill of the American Glanzstoff Corporation. The plaintiff had charge of the spinning department. He was an instructor. Four or five employees worked under plaintiff's direction and instruction. The plaintiff gave instructions to the employees under him. He showed these employees how to spin and

how to make silk. These employees, in addition to operating certain machines, would have to mop the floors, wash their machines and doff the spools. Each employee under plaintiff had three machines to operate. Plaintiff was held responsible for everything that went on in the section or department he supervised. He was paid as an instructor and received about four dollars a week more than the employees working under plaintiff's supervision. Plaintiff's wages were $25 per week.

On Labor Day, September 1, 1930, it appears that the silk plant or corporation, for which plaintiff was working, decided to have a holiday and picnic. The plaintiff and ten or twelve other men were carrying a pennant pole on the athletic field where the picnic was being held.

The plaintiff testified that this pole was about eight feet high and thirteen inches across its base, and in carrying this pole, plaintiff's arm was hurt. He testified that he sprained his wrist, that he called a doctor the next morning. Dr. Reynolds of Elizabethton came. Then he went to a hospital, operated by Dr. Shoun. He remained in Dr. Shoun's hospital eighteen days. He also had an X-ray made of his arm by Dr. Williams. He was treated by Dr. West of Johnson City.

On the 13th of October, following plaintiff's injuries of September 1st, the plaintiff returned to his work and drew his usual $25 a week, and continued to work for his employer until the 28th day of December, acting as supervisor.

On the 28th day of December, it appears from plaintiff's release card that he was released by his employer or let out due to reduction of force. The card stated, months of service, "over two years," ability, "good," conduct, "fair." This card was signed by foreman, Roy N. Bell. Under the head of remarks, which follows the signature where plaintiff signed for his check, the card states, "reducing force which compels changes which he was unable to do duties with a sore hand, signed R. N. B."

Plaintiff testified that his foreman, Mr. Bell, told plaintiff that he, plaintiff, was not able to make the speed on the first machine, and this would cause more work on Bell and he would have to let plaintiff off and get somebody who could do the work.

Plaintiff testified that he was let out because his employer was cutting down the force. Plaintiff further testified that from December 28, 1930, the day he left his employer to the time of the trial, he had never applied for any work, that he had not done any work. The plaintiff further testified that he had piddled around seven days on the roads of Carter County, but he could not do manual labor as other men could do. He admitted, on cross-examination, that he attended dances, could dance, was not suffering at the time of the

trial, and that he had not suffered for five months. He is twenty-six years of age. At the time of the trial he lived in Johnson City, and he was able to drive an automobile. He admitted that he could ride a gentle horse or that he could ride a plow, and he could walk around and give the same instructions at the silk plant that he did prior to his injury.

It appears that the plaintiff, after he was released from further service by his employer, received a sentence for some infraction of the law, and he was required to work on the county roads.

Kinnie Cole, a deputy sheriff, testified that the plaintiff tried to work on the roads, that he gave the plaintiff a shovel and plaintiff said that he couldn't use it, that he directed the plaintiff then to carry water, and when he was not carrying water, the plaintiff handled rocks with one hand on the road. Later this deputy sheriff said that he told the jailer that he had no use for plaintiff, that when he took a man out he expected work out of him.

The doctors testified that there were eight bones in plaintiff's wrists that had grown together and become one bone. They pronounced plaintiff's trouble as "ankylosis," which is a permanent stiffening of the joint. The bones grew together and they did not have normal function.

The plaintiff, in explaining his working on the Carter County roads while serving a jail sentence, testified, "I could not do manual labor as much as other men could do." Q. "You could not do as much as other men could do?" A. "No."

During the trial it developed that the plaintiff was insured by the John Hancock Mutual Life Insurance Company of Boston, Massachusetts. It appears that a policy was issued by this company on December 10, 1930, and was in force when the plaintiff ceased working for his employer, the American Glanzstoff Corporation. This John Hancock policy had been substituted for the policy issued by the defendant. At the time the plaintiff was questioned about the policy issued by the John Hancock Company, the following occurred: Counsel for plaintiff, Mr. Guinn, stated to the Court:

"MR. GUINN: We want to amend so as to include this John Hancock Life Insurance Company policy. We move to amend.

"MR. TAYLOR: I don't object, but I don't represent the John Hancock Insurance Company.

"THE COURT: You could not take judgment.

"MR. GUINN: We withdraw, let them go ahead."

The plaintiff, it appears, had applied for the policy of the John Hancock Company.

"Total disability and permanent disability are issues of fact to be determined on the evidence adduced in each individual case and in the determination of which the jury or judge may look to the phys-

ical appearance of the claimant and the history of the case and consider lay and expert testimony; disability being total when it incapacitates the claimant from any remunerative occupation, and being permanent when it is lasting or continuous, as distinguished from temporary merely, which affords a probability of recovery.

"In insurance parlance the phrase 'totally and permanently disabled' contemplates a physical condition at the time of the claim which reasonably convinces the judging authorities that (a) the subject is then totally disabled, and (b) will so remain for life." Life Insurance Co. v. Noe, 161 Tenn., 335, 31 S. W. (2d), 689.

In the Noe case, the claimant had been ill for many months with pellagra. She had lost weight from 110 to 85 pounds. She had a running temperature, with pelvic disturbances suggesting surgical treatment.

In the case of the Pacific Mutual Life Ins. Co. v. McCrary, 161 Tenn., 389, 32 S. W. (2d) 1052, our Supreme Court in a suit for total disability, said:

"Total disability within the meaning of the law of insurance does not require a state of absolute helplessness, but it is an inability to do the material acts necessary to the prosecution of insured's business or occupation (and substantially all the material acts) in (substantially) his usual or customary manner. One may still be described as totally disabled, although he is able at intervals to perform certain acts in connection with the former occupation or calling that he pursued. Citing: 14 R. C. L., 1315; 1 C. J., 462, and Notes 51 A. L. R., 1048; 41 A. L. R., 1376; 37 A. L. R., 151; 24 A. L. R., 203.

"Insured's occupations were those of physician and farmer. He was afflicted with tuberculosis and myocarditis, with little or no hope of recovery and was totally disabled from pursuing his profession as a doctor. He was unable to ride or go about over his farm and was confined to his house. He was there consulted by his employees about farming operations but gave no personal supervision to them. He bought cattle through an agent and advised with his wife about lending money but he never saw the cattle so bought. Prior to his illness he had been personally active in looking after the farm. HELD: The evidence sustained a finding that insured was totally disabled within the meaning of a policy insuring against disability which "totally and permanently prevents insured from performing any work or engaging in any occupation or profession for wages, compensation or profit."

In the instant case the facts are different to the facts establishing total and permanent disability in the two cases from which we have just quoted. The plaintiff, in the instant case, received a sprained wrist on September 1, 1930. He returned to his usual avocation of duties with his employer on October 13th and remained with his

employer until December 28th, two and one-half months when he was released. The reason for releasing the plaintiff was due to reduction of force. It is undisputed that on account of the employer reducing its force which compelled changes, which the plaintiff was unable to do with a sore hand, he was released.

The plaintiff testified that he could not do full manual labor on account of his injured wrist.

And while the physicians testified that this injury would be, in their opinion, permanent, the plaintiff, in the instant case in our opinion, has failed to establish that he has become totally and permanently disabled by bodily injury or disease, and that he will be at all times hereinafter, wholly prevented from engaging in any gainful occupation.

It appears that the plaintiff was released on account of a reduction of force. We know judicially that there has been a great reduction in the number of employees by practically all corporations during the past twenty-four months. And employees who have been let out on account of a reduction of force have not ben able to secure gainful employment where the employee seeks work and has two able and ready hands.

We are of the opinion that there is no error in the judgment of the lower court in directing a verdict in favor of the defendant.

It results that the assignments of error are overruled. The judgment of the lower court is affirmed. The plaintiff will pay the costs of the cause, it appearing that he executed the pauper's oath at the institution of his suit and upon the appeal.

Heiskell and Senter, JJ., concur.